UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| TRACIE L. GARDNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-CV-524-CHB-CHL |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF SOCIAL | ) | **ORDER ON OBJECTIONS TO** |
| SECURITY, | ) | **MAGISTRATE JUDGE'S REPORT** |
| | ) | **AND RECOMMENDATION** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Tracie Gardner filed this action seeking review of the decision by Defendant Commissioner of Social Security to deny her application for supplemental security income, as well as disability and disability insurance benefits. [R. 1]. Gardner submitted her Fact and Law Summary on February 26, 2021. [R. 15]. The Commissioner submitted her Fact and Law Summary on May 28, 2021. [R. 21]. Magistrate Judge Lindsay issued a Report and Recommendation on January 4, 2022, [R. 22], recommending that the Commissioner's decision be affirmed. This matter is before the Court on Plaintiff's Objections to the Report and Recommendation, [R. 23]. The Commissioner filed a Response, [R. 24]. This matter is now ripe for review. For the reasons stated below, the Court, having reviewed the record and the parties' motions, affirms the Commissioner's decision.

I.   **Background**

Magistrate Judge Lindsay's Report and Recommendation ("Recommended Disposition") ably sets out the full factual background of this case. [R. 22]. On June 24, 2014, Gardner applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"), alleging that she was disabled as of April 15, 2014. [R. 13, p. 86]. Her applications were initially

denied and again on reconsideration, after which she requested a hearing before an

Administrative Law Judge ("ALJ"). *Id.* On January 23, 2017, ALJ Steven Collins held a hearing,

and subsequently issued an unfavorable decision on April 27, 2017, finding Gardner was not

disabled. *Id.* at 86–96. Gardner requested review of ALJ Collins' decision, but the Appeals

Council denied her request. *Id.* at 266. Gardner did not timely seek further appeal.  However, on

May 24, 2017 and September 21, 2017, she again applied for DIB and SSI, alleging that she was

disabled as of May 3, 2017. *Id.* at 19. The applications were denied initially and again on

reconsideration. *Id.* As a result, Gardner requested a hearing before an ALJ, and such hearing

took place before ALJ William C. Zuber on April 29, 2019. *Id*. at 50–82, 190–92. On August 14,

2019, ALJ Zuber issued an unfavorable decision. *Id.* at 19–44.

ALJ Zuber engaged in the five-step sequential process set forth in the regulations under

the Social Security Act. 20 C.F.R. § 404.1520(a)–(e); 20 C.F.R. § 416.920; *see Kyle v. Comm'r*

*of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). At step one, ALJ Zuber determined that Gardner

had not engaged in substantial gainful activity since May 3, 2017. [R. 13, p. 22]. At step two, he

determined that Gardner has the following severe impairments: degenerative changes of the

lumbar spine, diabetes mellitus with peripheral neuropathy, right shoulder impingement, chronic

obstructive pulmonary disease, and obesity. *Id.* At step three, ALJ Zuber found that none of

Gardner's impairments met or medically equaled the severity of one of the listed impairments.

*Id.* at 30. He then determined that Gardner had the residual functional capacity to perform light

work with the following limitations:

> the claimant is able to use the dominant right upper extremity for occasional
> reaching overhead, pushing and pulling; the claimant requires the use of a cane for
> ambulation; the claimant is able to perform occasional stooping, crouching,
> crawling, kneeling, and climbing of ramps or stairs but no climbing of ladders,
> ropers or scaffolds; and the claimant is able to have no concentrated exposure to

> dust, fumes, gases, odors, poor ventilation or extremes of temperatures extremes or
> humidity.

*Id.* at 31. At step four, ALJ Zuber determined that Gardner was capable of performing past work

as a Claims Examiner (Auditor and Adjuster) and as a Claims Supervisor. *Id.* at 42.

Consequently, ALJ Zuber concluded that Gardner was not disabled as defined in the Social

Security Act from the alleged onset date through the date of his decision. *Id.* at 44. The Appeals

Council denied Gardner's request for review. *Id.* at 5–7. Gardner filed this action challenging the

Commissioner's denial of her benefits. [R. 1]. The Court referred the matter to Magistrate Judge

Lindsay, who recommended that the Commissioner's decision be affirmed. [R. 22].

## II.   Standard of Review

When a party objects to a report and recommendation, the Court reviews *de novo* only

those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1)(C).  The Court

may adopt without review any portion of the report to which no objection is made. *See Thomas

v. Arn*, 474 U.S. 140, 150 (1985).  On review, the Court "may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the magistrate judge

with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the

portions of Magistrate Judge Lindsay's Recommended Disposition to which Gardner objects to

determine whether relief is warranted.

Judicial review of the Commissioner's decision is restricted to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v.

Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than

a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum.

Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve

conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

To determine disability, the ALJ conducts a five-step analysis:

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.
2. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . .
3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.
4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.
5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin*, 475 F.3d at 730 (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review terminates. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof during the first four steps; this burden shifts to the Commissioner at step five to prove the availability of other work in the national economy that the claimant is capable of performing. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997). The claimant always retains the burden of proving lack of RFC. *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008).

## III.    Analysis

In her Objection to the Recommended Disposition, [R. 22], Gardner argues that the Court should not adopt Magistrate Judge Lindsay's analysis for the following two reasons. First,

Gardner argues that ALJ Zuber's labeling of her cervical and hand impairments as non-severe is not a harmless error, as concluded by Magistrate Judge Lindsay. *Id*. at 1. Specifically, Gardner believes that ALJ Zuber's severity determination at Step Two is faulty because he "relied on a lack of opinion evidence" and outdated state agency opinions, which evaluate evidence only through April 2018. *Id*. at 1–2. The rationale behind Gardner's argument is that ALJ Zuber did not evaluate more recent evidence when determining the severity of Gardner's cervical and hand impairments. *Id*. Second, Gardner argues that ALJ Zuber's RFC determination is not supported by substantial evidence because he failed to properly evaluate her subjective complaints of hand pain and failed to consider a rheumatologist report from April 2019. *Id.* at 2. In her Response, the Commissioner contends that the Recommended Disposition should be adopted because Magistrate Judge Lindsay correctly concluded that ALJ Zuber considered the entire record, including both Gardner's severe and non–severe impairments and complaints of pain, when determining her RFC. *See* [R. 24]. For the reasons stated below, the Court agrees with the Commissioner.

### A.  Severe Impairments Determination

In the Sixth Circuit, the severity determination is "a de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "Under the prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* The severity analysis occurs at Step Two of the five-step analysis and the fact that some of a claimant's impairments are not deemed to be severe at step two is "legally irrelevant" where other impairments are found to be severe. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

This is because once an ALJ makes a finding that a claimant has at least one severe impairment, he must consider all impairments, including those deemed non-severe, during the sequential steps of the five-step analysis. *Maziarz*, 837 F.2d at 244; *see also Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) ("So long as the ALJ finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or non-severe is legally irrelevant.") (internal quotations omitted). Thus, "an erroneous finding of nonseverity at step two is therefore harmless where the ALJ properly considers nonsevere impairments at later steps." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (citing *Maziarz*, 837 F.2d at 244); *see also Thornton v. Saul*, No. 4:20-CV-01420-JRA, 2021 WL 3934332, at *9 (N.D. Ohio June 21, 2021), *report and recommendation adopted sub nom. Thornton v. Comm'r of Soc. Sec.*, No. 4:20-CV-1420, 2021 WL 4025192 (N.D. Ohio Sept. 2, 2021). Finally, an ALJ need not mention every medical record relied on in making his finding. *Emard*, 953 F.3d at 851. The Sixth Circuit has concluded that an "ALJ's statement that he had conducted 'a thorough review of the medical evidence of record,' along with the fact that the ALJ ha[s] considered the claimant's impairments individually," suffices to show that the ALJ has considered all the impairments. *Id.* (quoting *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 591–92 (6th Cir. 1987)).

In *Anthony*, the plaintiff argued that the ALJ erred by "failing to determine that all of [his] various impairments were 'severe' at step two." *Anthony*, 266 F. App'x at 457. However, because the ALJ specifically found that other impairments qualified as severe, and because he considered all of Anthony's impairments (both severe and non-severe) in the remaining steps of the sequential analysis, the Sixth Circuit held that "the fact that some of Anthony's impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id*. Thus, the Sixth

Circuit concluded that the ALJ "did not commit reversible err" in making his severity determinations. *Id.*

The same is true here. ALJ Zuber's determination that Gardner's cervical and hand impairments are non-severe, if erroneous, is harmless. As Magistrate Judge Lindsay noted, ALJ Zuber, at Step Two, found that Gardner had five "severe" impairments, "including degenerative changes of the lower spine and diabetes mellitus with peripheral neuropathy affecting her lower extremities." [R. 22, p. 7]; *see also* [R. 13, p. 22]. As a result, ALJ Zuber was required to consider *all* of Gardner's impairments in the remaining steps of the five-step analysis. *Anthony*, 266 F. App'x at 457. After carefully reviewing the record, Magistrate Judge Lindsay found a sufficient basis to conclude "that the ALJ properly considered all of the plaintiff's impairments when crafting the RFC." [R. 22, p. 8]. This Court concludes no differently. In his opinion, ALJ Zuber recognized the proper standard, as he noted that he "must consider all of [Gardner's] impairments, including impairments that are not severe" and correctly cited to SSR 96-8. [R. 13, p. 21]; *see also Emard*, 953 F.3d at 852 (noting that an ALJ need not discuss all non-severe impairments in the residual-functional capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96–8p). In addition, at Step Two, ALJ Zuber provided a thorough, well-reasoned explanation as to why Gardner's cervical and hand impairments were deemed non-severe. *See* [R. 13, pp. 25–26]. Finally, the record demonstrates that at Step Four, ALJ Zuber relied on "the total medical and other evidence" when considering all of Gardner's symptoms, including her hand and cervical impairments. *Id*. at 31, 40.

Moreover, Gardner's argument that ALJ Zuber's severity determination at Step Two is faulty because he "relied on a lack of opinion evidence" and outdated state agency opinions, which evaluate evidence only through April 2018, is inaccurate. The record indicates that ALJ

Zuber relied on medical evidence, including treatment records and physician notes post 2018, when evaluating the severity of Gardner's impairments. For example, ALJ Zuber considered a January 2019 primary care note in which Gardner stated her hand pain was "tolerable" with the assistance of pain and other medications. *Id*. at 25, 382–86. ALJ Zuber also considered a February 2019 x-ray and a January 2019 evaluation by Gardner's pain management specialist, who noted "significant paraspinal to the neck . . . with otherwise normal cervical spine findings and intact bilateral upper extremity strength." *Id*. at 25, 687–694. Finally, ALJ Zuber considered consistent objective findings that there was "no limitation of motion, [Gardner] demonstrated grossly normal muscle tone and strength, and there were no other abnormal objective findings regarding her hands." *Id*. at 25–26. Thus, Gardner's argument is inconsistent with findings in the record.

Accordingly, the Court finds that ALJ Zuber's severity determination was made pursuant to the proper legal standard and is supported by substantial evidence. *See Colvin*, 475 F.3d at 729–730. Thus, the remaining question is whether ALJ Zuber's credibility determination is supported by substantial evidence.

### B.  Evaluation of Subjective Complaints of Hand Pain

The ALJ may consider a claimant's credibility in weighing allegations of pain. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d. 525, 531 (6th Cir. 1997). However, a claimant's "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529); *see also* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…"). Subjective claims of

disabling pain must be supported by objective medical evidence. *Duncan*, 801 F.2d at 852–53.

The Sixth Circuit evaluates subjective complaints of pain by way of a two-pronged test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994) (quoting *Duncan*, 801 F.2d at 853).

If the claimant establishes one of those requirements, the SSA regulations direct the ALJ to consider the following factors in evaluating the claimant's subjective statements about the intensity and persistence of pain or other symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment other than medications received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms, such as lying down; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)–(vii). While the ALJ should consider the factors, she is not required to address each one in her opinion. *See Brewer v. Berryhill*, No. 6:16-cv-00108-GFVT, 2017 U.S. Dist. LEXIS 97075, at *14-15 (E.D. Ky. June 22, 2017) ("The regulations do not require a detailed, item-by-item discussion of each credibility factor…and although the ALJ should consider the factors, the ALJ need not engage in such an extensive analysis in every decision, especially where the medical record does not objectively support the claimant's allegations.").

"However, even when the medical records confirm the requisite objective medical condition supporting the claimant's complaints, 'an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a

determination of disability.'" *Id.* at 10 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). An ALJ's credibility findings are "to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531 (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). The federal courts will not substitute their own credibility determination for that of the ALJ as the fundamental task of the Commissioner is to "resolve conflicts in the evidence and to decide questions of credibility." *Felisky*, 35 F.3d at 1035. However, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters*, 127 F.3d at 531 (citation omitted).

Gardner contends that the RFC determination is not supported by substantial evidence because ALJ Zuber failed to properly evaluate her subjective complaints of pain and swelling in her hands. [R. 23, p. 2].  Specifically, Gardner alleges her hands/fingers suffer from burning, tingling, and arthritic pains and muscle cramps/spasms. [R. 19, p. 25]. Gardner asserts that such symptoms prevent her from using her hands/fingers for more than brief periods of activity and for gripping and holding objects. *Id.*  In her Objections, Gardner claims ALJ Zuber failed to properly consider the evidence, including a 2019 rheumatologist report and her daily activities, resulting in an RFC that "does not contain any limitations in handling or fingering." [R. 23, p. 2]. In Response, the Commissioner argues that ALJ Zuber considered numerous factors when determining Gardner's RFC, including treatment records and daily activities, and therefore, his decision should not be reversed "because he did not discuss every piece of the evidence in the record," as Gardner seems to require. [R. 24, p. 2].

Upon review of his opinion, ALJ Zuber determined that Gardner suffered from the following medically determinable impairments: Degenerative changes of the Lumbar Spine;

Diabetes Mellitus with Peripheral Neuropathy; Right Shoulder Impingement; Chronic

Obstructive Pulmonary Disease; and Obesity. [R. 13, p. 22]. This finding is supported by

substantial evidence. Accordingly, the first prong of the test is satisfied. However, ALJ Zuber

also found:

> [Gardner's] medically determinable impairments could reasonably be expected to
> cause some of the alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence, and limiting effects of these symptoms are
> not entirely consistent with the medical evidence and other evidence in the record[.]

*Id.* at 33. Since ALJ Zuber considered a number of factors that suggest Gardner's

hand/finger impairments were not as severe as alleged, the Court concludes that substantial

evidence also supports this finding.

First, ALJ Zuber considered various medical reports, which showed that Gardner's

symptoms had not "caused any more than minimal limitation of her ability to use her

hands/fingers to perform basic work activities . . . " *Id*. at 26. ALJ Zuber considered a

February 2017 note where Gardner reported that her hand pain was "tolerable" with the

assistance of pain and other medications. *Id*. at 25, 382–86. ALJ Zuber noted that a

"treating neurosurgical specialist recorded specific findings of intact sensation intact to

light touch in the claimant's upper extremities during [Gardner's] examinations in March,

September and October 2018 . . . " *Id*. at 25–26, 610–18. ALJ Zuber considered a January

2019 primary care note that characterized Gardner's osteoarthritis as "stable." *Id.* at 26,

669–79. Finally, ALJ Zuber noted that a treating pain management specialist failed to note

any abnormal findings when evaluating Gardner in January 2019. *Id*. at 26, 586–95. In fact,

as acknowledged by ALJ Zuber, the totality of the evidence shows: normal objective

findings for motion; normal muscle tone and strength with no accompanying abnormal

findings; that no treatment is necessary for hand pain; and no complaints of hand pain from January 2019 to April 2019. *Id.* at 25–26, 586–93, 610–18, 630–31, 645, 648–49, 660–66, 686–93. Thus, despite ongoing pain and swelling in Gardner's hands and fingers, the medical evidence largely shows normal findings.

Gardner argues that the ALJ Zuber's determination is faulty because "the ALJ did not consider that in April 2019, a rheumatologist specifically noted chronic joint pain and swelling in the hand and finger joints." [R. 23, p. 2]. However, Gardner's argument is unpersuasive. An ALJ is not required to "expressly reference every piece of evidence in the record." *Overstreet v. Comm'r of Soc. Sec.*, No. 1:20-CV-00645, 2021 WL 4145167, at *3 (N.D. Ohio Sept. 13, 2021) (quoting *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020)). And the fact that ALJ Zuber did not explicitly address the 2019 rheumatologist note does not mean he did not consider it in his ultimate RFC determination. *See Spencer v. Colvin*, 2015 U.S. Dist. LEXIS 100029, at *11 (E.D. Ky. July 20, 2015) (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)) ("The 'ALJ's failure to cite specific evidence does not indicate that it was not considered.'"). Thus, ALJ Zuber's decision will not be overturned, as Gardner wishes, because of a failure to expressly reference the April 2019 rheumatologist report.

Second, ALJ Zuber considered Gardner's daily activities, which include: preparing food by herself, exercising for 30-45 minutes; performing household chores; using her laptop computer for an hour to a couple of hours; and driving and going places alone. [R. 13, p. 40–41]. Though Gardner alleges limited activities of daily living due to back and foot pain, she describes numerous activities that she can perform involving her hands and fingers, including peeling potatoes or cutting/chopping vegetables; wiping down kitchen

12

and bathroom counters; cleaning the stovetop and kitchen table; folding laundry; using her laptop; texting with family and friends; sewing and working puzzles. *Id*. Further, the record demonstrates that Gardner has the ability to handle personal hygiene, cleaning, cooking, grocery shopping, and driving with little to no assistance. *Id*. Therefore, ALJ Zuber's conclusion that Gardner's subjective limitations fail to support a finding of greater limitation than the determined residual functional capacity is amply supported by the evidence in the record, including her daily activities. *See Young v. Secretary of Health & Human Services*, 925 F.2d 146, 150 (6th Cir. 1990) (finding that claimant failed to show marked restriction in activities of daily living where the evidence of record exemplified that claimant was able to perform "a variety of daily activities").

Further, ALJ Zuber appropriately considered that, outside of pain/muscle relaxants and anti-inflammatory medications, no specific treatment has been ordered for Gardner's hands. *See* [R. 13, pp. 25–26, 382–386, 631–632, 646, 649–650]; *see also Tweedle v. Comm'r of Soc. Sec.*, 731 F. App'x 506, 507 (6th Cir. 2018) (stating the ALJ appropriately considered the claimant's conservative treatment in discounting his claim of disabling pain); SSR 16–3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of the record.").

Thus, after having properly analyzed the record and Gardner's testimony, ALJ Zuber properly evaluated Gardner's subjective reports concerning her symptoms to establish the alleged disability.  The Court finds this decision to be appropriate, and therefore will uphold ALJ

Zuber's evaluation of Gardner's subjective complaints of pain and swelling symptoms in her hands/fingers because it is clear—after a comprehensive review of the entire record, administrative hearing, and medical documents—that ALJ Zuber's findings were reasonable and supported by substantial evidence. *See Coney v. Comm'r of Soc. Sec.,* No. 1:12–CV–800, 2014 U.S. Dist. LEXIS 21290, at *26 (W.D. Mich. Jan 31, 2014) ("[S]o long as the ALJ's determination is supported by substantial evidence, it must stand."); *see also Rudd v. Comm'r Soc. Sec.,* 531 F. App'x 719, 726 (6th Cir. 2013) (citing *Ulman v. Comm'r Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012)) ("The Commissioner of Social Security's decision must be affirmed if substantial evidence supports it, even if substantial evidence would support an opposite conclusion.")

## IV. Conclusion

Based on the Court's review of ALJ Zuber's decision, the Court finds that it is supported by substantial evidence and was made in accordance with the proper legal standards. Therefore, the Court will affirm the decision of the Commissioner and adopt the Magistrate Judge's Report and Recommendation.

Therefore, for the reasons stated above,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Magistrate Judge's Report and Recommendation **[R. 22]** is **ADOPTED** to the extent not inconsistent with this opinion.

3. Plaintiff Tracie Gardner's Objection to the Report and Recommendation **[R. 23]** is **OVERRULED**.

4.  A Judgment in favor of Defendant Commissioner will be entered contemporaneously

herewith.

This the 25th day of March, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

15